IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| CARA ROWLAND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BISSELL HOMECARE, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No.  2:22-CV-1500<br>)<br>) CLASS ACTION<br>)<br>)<br>) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, Defendant BISSELL Homecare, Inc. ("BISSELL") files this Notice of Removal[1] of this civil action from the Court of Common Pleas of Allegheny County, Pennsylvania to the United States District Court for the Western District of Pennsylvania, Pittsburgh Division.  The grounds for removal are as follows:

1. On or about September 16, 2022, Plaintiff Cara Rowland ("Plaintiff") commenced this putative class action by filing a Class Action Complaint, styled *Cara Rowland, individually and on behalf of all others similarly situated v. BISSELL Homecare, Inc.*, in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division, Case No. GD-22-011649 ("Complaint").  In her Complaint, Plaintiff alleges that BISSELL's warranty violates the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 ("MMWA").  Compl., ¶¶ 2-5.

---

[1] The arguments and law raised in this Notice of Removal are for the purposes of removal only.  By the assertion or omission of any argument or reliance upon any law, BISSELL does not intend to waive and specifically reserves its rights to assert any defenses and/or objections to which it may be entitled to assert through dispositive motion or otherwise.

2. Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint and all process served upon BISSELL are attached hereto as Exhibit A.

3. Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of service of the Complaint and summons upon BISSELL. BISSELL was served with process on September 26, 2022. Accordingly, this Notice of Removal is filed within thirty days of such service and is timely under 28 U.S.C. § 1446(b).

4. The time for BISSELL to answer, move, or otherwise plead with respect to the Complaint has not yet expired.

5. Concurrent with the filing of this Notice, BISSELL is serving this Notice on Plaintiff's counsel and filing a copy of the Notice with the Clerk of the Court of Common Pleas of Allegheny County, Pennsylvania. A true and correct copy of the Notice of Filing Notice of Removal which will be filed with the Clerk of the Court of Common Pleas of Allegheny County, Pennsylvania is attached hereto as Exhibit B.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 118(c) and 1441(a) because the United States District Court for the Western District of Pennsylvania, Pittsburgh Division, is the federal judicial district embracing the Court of Common Pleas of Allegheny County, Pennsylvania, where this action was originally filed.

7. By filing a Notice of Removal in this matter, BISSELL does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and BISSELL specifically reserves its rights to assert any defenses and/or objections to which it may be entitled.

8. As shown below, this case is removable to federal court based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d)., and diversity jurisdiction under 28 U.S.C. § 1332(a).

## **DIVERSITY JURISDICTION UNDER CAFA**

9. CAFA was enacted to expand federal jurisdiction over class actions. *See Walsh v. Defs., Inc.*, 894 F.3d 583, 586 (3d Cir. 2018) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 148-49 (3d Cir. 2009). It follows that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Further, CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Portnoff v. Janssen Pharm., Inc.*, 237 F. Supp. 3d 253, 256–57 (E.D. Pa. 2017) (citing *Gallagher v. Johnson & Johnson Consumer Companies, Inc.*, 169 F. Supp. 3d 598, 602 (D.N.J. 2016)).

10. CAFA provides that a defendant may remove a state court class action to federal court if: (1) the proposed class consists of 100 or more members; (2) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; and (3) any member of the proposed plaintiff class is a citizen of a different state than any defendant. *See* 28 U.S.C. §1332(d)(2), (d)(5), (d)(6), and § 1453(b).

11. This putative class action satisfies all the jurisdictional requirements under CAFA. Specifically, the proposed class consists of 100 or more putative class members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000. *Id.*

**A.     The Putative Class Size Exceeds 100 Members.**

12. CAFA confers jurisdiction over class actions that consist of at least 100 putative class members. 28 U.S.C. § 1332(d)(5)(B).

13. In the Complaint, Plaintiff brings this action individually and on behalf of a purported class of Pennsylvania citizens "who purchased a product subject to Defendant's Warranty within the Class Period." Compl. ¶ 40. Plaintiff states that "Class Period" means three years prior to the date of filing this Complaint through the date of class certification. Compl. ¶ 49 n.17.

14. The Complaint was filed September 16, 2022. Therefore, the class period extends from September 16, 2019, through the future date of a hypothetical class certification.

15. Thus, the proposed class is comprised of all Pennsylvania citizens who purchased any BISSELL products subject to the warranty from September 16, 2019 through class certification.

16. During the period of time from September 16, 2019 to the filing of this lawsuit on September 16, 2022, more than 100 customers purchased BISSELL products subject to BISSELL's warranty. The exact number of BISSELL customers in Pennsylvania far exceeds 100. BISSELL's confidential financial and sales data, which include the number of BISSELL customers during the relevant time period, is being provided in Exhibit C, which BISSELL will move to file under seal because public disclosure of such sensitive information would likely result in competitive harm or business harm. *See Cutsforth, Inc. v. Lemm Liquidating Co., LLC,* No. CV 17-1025, 2020 WL 772442, at *3 (W.D. Pa. Feb. 18, 2020) (finding that if information derives independent economic value from not being generally known by others who can obtain economic value from its disclosure, then court should accommodate reasonable efforts to maintain its secrecy). Furthermore, Plaintiff alleges in the Complaint that the class "contains thousands of individuals, at least." Compl. ¶ 52. Therefore, the putative class well exceeds 100 people.

**B.     Minimal Diversity is Satisfied.**

17.    The minimal diversity requirement under CAFA is satisfied as long as at least one putative class member is a citizen of a different state than at least one defendant. 28 U.S.C. § 1332(d)(2).

18.    According to the Complaint, Plaintiff Cara Rowland is a citizen and resident of Crawford County, Pennsylvania. Compl. ¶ 8.

19.    BISSELL is a Michigan corporation with its principal place of business in Grand Rapids, Michigan. *See* Compl. ¶ 10. Therefore, BISSELL is deemed a citizen of Michigan. 28 U.S.C. § 1332(c)(1).

20.    Minimal diversity is satisfied because Plaintiff is a citizen of a different state from BISSELL. 28 U.S.C. § 1332(d)(2)(A).

**C.     The Aggregate Amount in Controversy Exceeds $5,000,000.**

21.    To confer subject matter jurisdiction on this Court based on CAFA, the amount in controversy must exceed the sum or value of $5,000,000.00, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2). The amount in controversy is calculated by aggregating the claims of the individual class members, including the value of any declaratory or injunctive relief sought. 28 U.S.C. § 1332(d)(6). "[T]he District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million. If so, there is jurisdiction and the court may proceed with the case." *Standard Fire Ins. Co.*, 133 S.Ct. at 1348. Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 84.

22.     Plaintiff has not specified an amount in controversy but seeks injunctive relief, declaratory relief, equitable relief, as well as "experts' fees, attorneys' fees and the cost of prosecuting this action." Compl. ¶ 7; Compl., Prayer ¶¶ c,d.

23.     Under CAFA, the Court may determine the amount in controversy based on the value of the injunctive relief from either the plaintiffs' or the defendant's point of view. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397–98 (3d Cir. 2016) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)) (stating the amount in controversy is measured by "the value of the object of the litigation"); *Lenell v. Advanced Min. Tech., Inc.*, No. 14-CV-01924, 2014 WL 7008609, at *3 (E.D. Pa. Dec. 11, 2014) (valuing equitable relief from the plaintiffs' viewpoint); *Excel Pharm. Servs., LLC v. Liberty Mut. Ins. Co.*, 389 F. Supp. 3d 289, 293 (E.D. Pa. 2019) (valuing declaratory relief from defendant's viewpoint); *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 491, n.6 (W.D. Pa. 2009) (valuing injunctive relief from defendant's viewpoint). Statutory attorneys' fees sought are also properly included in determining the jurisdictional amount. *See Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (holding that compensatory damages, punitive damages, and attorney's fees available to putative class must be considered when calculating amount in controversy); *see also Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir.1997) (attorneys' fees are "necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action.").

24.     To establish the amount in controversy sufficient to remove a class action to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89. A defendant satisfies "CAFA's amount in controversy requirement where its notice of removal includes a plausible allegation that the stakes exceed $5,000,000." *Fox v.

6

*Chipotle Mexican Grill, Inc.*, No. No. 2:20-cv-1448, 2021 WL 706757, at *6 (W.D. Pa. Feb. 23, 2021); *see also Lewis*, 610 F. Supp. 2d at 483.

25.     When removing a lawsuit, the defendant may present an estimate of the amount in controversy based on a "reasonable reading of the value of the rights being litigated." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 507 (3d Cir. 2014) (quoting *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002)).

26.     The aggregate value of the relief sought in this case exceeds $5,000,000.00. Plaintiff's Complaint alleges that BISSELL's warranty violates the MMWA's anti-tying provision and seeks to force BISSELL to remove the allegedly violative warranty provisions identified in the Complaint. Compl. ¶¶ 1, 5, 65. More specifically, Plaintiff alleges that even though BISSELL's warranty does not prohibit third-party repair, it is meant to lead consumers to believe that third-party repair will void the warranty. Compl. ¶ 43. In essence, Plaintiff is alleging that BISSELL refuses to repair or replace products in violation of the MMWA. The full replacement value of the products sold during the Class Period, which is the sales price for the product, is the maximum amount for which BISSELL is responsible under the warranty and constitutes the amount that the putative class has placed into controversy. *See Lewis,* 610 F. Supp. 2d at 485 ("In actions seeking … injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

27.     BISSELL financial and sales records indicate that the value of the products covered by BISSELL's warranty and sold to customers in Pennsylvania between September 16, 2019 and September 16, 2022 totaled more than $5,000,000. *See* Exhibit C, which BISSELL will move to file under seal. These sales are a direct measure of the value of the amount in controversy because the Complaint purports to enforce warranty rights of the putative class to have their BISSELL

products repaired or replaced under the warranty, with the maximum amount of the warranty being the value of full replacement of the product. *See Lorah v. SunTrust Mortg., Inc.*, CA No. 08–703, 2009 WL 413113, *8, 2009 U.S. Dist. LEXIS 12318, *20–*21 (E.D. Pa. Feb. 18, 2009) (affidavit setting forth four plausible calculations, each showing that the jurisdictional threshold was met); *Fluke v. Cashcall, Inc.*, CA No. 08–5776, 2009 WL 637461, *4, 2009 U.S. Dist. LEXIS 18847, *8–*10 (E.D. Pa. Mar.10, 2009) (affidavit of defendant's associate general counsel showing that the amount-in-controversy threshold was met based on the number of loans extended by defendant and the conditions thereof); and *Cronk v. Cabot Oil & Gas Corp.*, CA No. 08–634, 2008 WL 2367294, *2, 2008 U.S. Dist. LEXIS 45485, *6 (M.D. Pa. June 5, 2008) (affidavit of defendant's regional land manager stating, based solely on his knowledge, that the "full value of the object of the litigation exceeds [the jurisdictional amount] exclusive of interests and costs.")

28. Furthermore, based on Plaintiff's own allegations, the putative class members are forced to incur the costs of purchasing a replacement product because they cannot exercise their rights under BISSELL's warranty. Indeed, Plaintiff alleges in her Complaint that BISSELL's warranty, as it currently exists, "force[s] consumers to buy new products" because "[w]hen it costs almost as much to repair an existing product as it does to buy a new version of the same product, consumers will likely opt to buy the new product." Compl., ¶ 38. Thus, the value of the relief sought by Plaintiff and the putative class is ultimately the value of the products.

29. Aside from the amounts that Plaintiff has placed into controversy from Plaintiff's perspective, there are pecuniary costs to BISSELL associated with warranty compliance and processing warranty claims. If BISSELL were ordered to revise the language in its warranty in its existing user guides, BISSELL would incur substantial costs to do so. The specific costs which

BISSELL would be forced to incur in revising the warranty language in its user guides is specifically set forth in Exhibit C, which BISSELL will move to file under seal.

30. Plaintiff also seeks the recovery of statutory attorneys' fees, which count toward the amount in controversy under CAFA. The MMWA allows a court to award a prevailing consumer "attorneys' fees based on actual time expended[] determined by the court to have been reasonably incurred." 15 U.S.C. § 2310(d)(2). The cost for BISSELL to comply with the injunctive relief sought by Plaintiff couple with the prospect of a fee award to Plaintiff in this matter also exceeds the CAFA threshold of $5 million. In at least some class action cases involving the MMWA, class counsel have sought, and been awarded, approximately $4 million or more in attorneys' fees. *See, e.g., In re Shop-Vac Mktg. & Sales Pracs. Litig.*, 2016 WL 7178421, at *17 (M.D. Pa. Dec. 9, 2016) (awarding more than $4 million in attorneys' fees); *O'Keefe v. Mercedes-Benz USA*, LLC, 214 F.R.D. 266, 311 (E.D. Pa. 2003) (awarding more than $4.8 million in attorneys' fees).

31. District courts in the Third Circuit generally find that consumer class actions, including those brought under the statute at issue here, require a significant amount of attorney hours to litigate, even when a case terminates before judgment. *See Fleisher v. Fiber Composites, LLC*, No. CIV.A.12-1326, 2014 WL 866441, at *14 (E.D. Pa. Mar. 5, 2014) (1,149.5 hours reasonable where case settled after pleading stage after some discovery was exchanged and reviewed by the parties); *Rossi v. The Proctor & Gamble Co.*, No. CIV.A. 11-7238 JLL, 2013 WL 5523098, at *10 (D.N.J. Oct. 3, 2013) (952 hours reasonable where case settled after pleading stage during the early stages of discovery). Cases proceeding to later stages require even more time. *See, e.g., In re Wellbutrin SR Antitrust Litig.*, No. CV 04-5525, 2011 WL 13392296, at **2, 6 (E.D. Pa. Nov. 21, 2011) (41,000 hours found reasonable where case was "well past discovery

9

and virtually ready for trial at the time of settlement"); *see also In re Shop-Vac Mktg. & Sales Pracs. Litig.,* No. 2380, 2016 WL 7178421, at **9, 13, 16–17 (M.D. Pa. Dec. 9, 2016) (7,517.43 hours reasonable where case settled after discovery in multidistrict consumer class action case); *Hegab v. Fam. Dollar Stores, Inc*., No. CIV.A. 11-1206 CCC, 2015 WL 1021130, at *13 (D.N.J. Mar. 9, 2015) (in employee misclassification class action case, finding over 1,000 hours of work reasonable where case settled only after extensive discovery). The median billable rate for attorneys in Pennsylvania in the class action context is approximately $485 to $700 per hour. *See Chakejian v. Equifax Info. Servs*., LLC, 275 F.R.D. 201, 216–17 (E.D. Pa. 2011) (accepting rates of $125 to $175 for paralegals and $485 to $700 for partners); *Reibstein v. Rite Aid Corp*., 761 F. Supp. 2d 241, 260 (E.D. Pa. 2011) (accepting rates of $650 for partners and $175–$225 for paralegals in a consumer class action litigation); *see also In re Shop-Vac Mktg. & Sales Pracs. Litig., No*. 2380, 2016 WL 7178421, at *15 (M.D. Pa. Dec. 9, 2016) ("District courts in this Circuit have approved awards of attorneys' fees in class action settlements where an attorney's hourly rate reached $835.00/hour or averaged $681.15/hour.").

32. Thus, aside from the fact that the value of the products sold in Pennsylvania, which Plaintiff has put at issue in this litigation, exceeds CAFA's $5 million jurisdictional minimum, the cost to BISSELL of compliance with an injunction combined with the payment of an award of attorneys' fees to Plaintiff's counsel exceeds the $5 million threshold. *See* Exhibit C, which BISSELL will move to file under seal.

33. In sum, the value of Plaintiff's requested injunctive and declaratory relief combined with the amount in attorneys' fees which Plaintiff will seek if she litigates this case through trial easily exceeds $5,000,000.00.

34. Because the CAFA jurisdictional requirements are all met, this case is properly removable to this Court under 28 U.S.C. § 1332(d).

### DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(a)

35. In additional to CAFA jurisdiction, there is also diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and BISSELL are completely diverse and the amount in controversy raised by Plaintiff exceeds $75,000. *See* 28 U.S.C. § 1332(a).

**A.    Complete Diversity of Citizenship Exists.**

36. As discussed above, Plaintiff is a citizen of Pennsylvania, and BISSELL is a citizen of Michigan. Because the parties are citizens of different states, there is complete diversity.

**B.    The Amount in Controversy Exceeds $75,000.**

37. The amount in controversy requirement for diversity jurisdiction is satisfied in this case because "the matter in controversy exceeds the sum or valued of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a).

38. Statutory attorney fees are considered when determining whether the amount in controversy is satisfied under 28 U.S.C. § 1332(a). *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997). Here, Plaintiff alleges a statutory claim for violation of the MMWA, which allows a court to award a prevailing consumer attorneys' fees. 15 U.S.C. § 2310(d)(2). Therefore, attorney's fees are statutorily provided for, and such fees can be included in the amount in controversy calculation. In Pennsylvania, the average rate for attorneys' fees is between $485-700 per hour. *Supra* ¶ 30. Thus, the $75,000 amount in controversy requirement would be met if Plaintiff's counsel spends just 155 hours solely on Plaintiff's case at a rate of $485/hour. *See* ¶ 30, *supra*; *see also Buscema v. Wal-Mart Stores East LP*, 485 F.Supp.3d 1319, 1332-33 (D.N.M. 2020) ("[I]f Plaintiff's counsel were to bill at the same rate they billed in the *Puma* case–$400 per hour–they

would hit the jurisdictional threshold in 187.5 hours . . . Given the complexity of civil litigation, the Court cannot say that it is 'legally impossible' for Plaintiff's counsel to spend that much time litigating the individual claim in this case."); *Synergetics, Inc. v. Hurst*, 333 F. Supp. 2d 841, 843 (E.D. Mo. 2004) (finding that attorneys' fees alone would likely exceed $75,000 amount in controversy).

39. Time spent on any preliminary investigations and preparation of this case could easily total 155 hours before the Complaint was even filed, and counsel will expend additional time litigating Plaintiff's claim through trial. Therefore, it is reasonable to conclude that the $75,000 threshold will be met through Plaintiff's counsel's attorneys' fees on Plaintiff's claims alone. *See* ¶ 30, *supra*. Thus, Plaintiff's request for fees is alone sufficient to satisfy the $75,000 amount-in-controversy requirement under Section 1332(a).

40. Because there is complete diversity and there is more than $75,000 in controversy, based on attorneys' fees alone, there is diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and this case is removeable under 28 U.S.C. § 1441.

WHEREFORE, Notice is given that this action is removed from the Court of Common Pleas of Allegheny County, Pennsylvania to the United States District Court for the Western District of Pennsylvania, Pittsburgh Division.

Dated: October 25, 2022

                                          Respectfully submitted,

                                          */s/ Joe N. Nguyen*
                                          Joe N. Nguyen (PA ID No. 93638)
                                          Stradley Ronon Stevens & Young, LLP
                                          2005 Market Street, Suite 2600
                                          Philadelphia, Pennsylvania 19103
                                          Telephone: 215.564.8095
                                          jnguyen@stradley.com

>Robert F. Tom (*pro hac vice* to be submitted)
>Kelly L. Hagy (*pro hac vice* to be submitted)
>BAKER, DONELSON, BEARMAN,
> CALDWELL & BERKOWITZ, P.C.
>First Horizon Building
>165 Madison Avenue, Suite 2000
>Memphis, Tennessee 38103
>Telephone: 901.526.2000
>Facsimile: 901.577.0818
>rtom@bakerdonelson.com
>khagy@bakerdonelson.com
>
>D. Sterling Kidd (*pro hac vice* to be submitted)
>BAKER, DONELSON, BEARMAN,
> CALDWELL & BERKOWITZ, P.C.
>One Eastover Center
>100 Vision Drive Suite 400
>Jackson, Mississippi 39211
>Telephone: 601.351.2400
>Facsimile: 601.351.2424
>skidd@bakerdonelson.com
>
>***Counsel for Defendant BISSELL Homecare, Inc.***

## CERTIFICATE OF SERVICE

I certify that on the 25th day of October, 2022, I filed the foregoing Notice of Removal with the Clerk of the Court, and served via electronic mail, to the following counsel of record:

| | |
|---|---|
| Edwin J. Kilpela, Jr. | Kevin Tucker |
| Elizabeth Pollock-Avery | Kevin J. Abramowicz |
| Kenneth A. Held | Chandler Steiger |
| Lynch Carpenter, LLP | Stephanie Moore |
| 1133 Penn Ave, 5th Floor | East End Trial Group LLC |
| Pittsburgh, Pennsylvania 15222 | 6901 Lynn Way Suite 215 |
| | Pittsburgh, PA 15208 |

>  /s/ *Joe N. Nguyen*
> Joe N. Nguyen (PA ID No. 93638)
> Stradley Ronon Stevens & Young, LLP
> 2005 Market Street, Suite 2600
> Philadelphia, Pennsylvania 19103
> Telephone: 215.564.8095
> jnguyen@stradley.com
>
> *Counsel for BISSELL Homecare, Inc.*